```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
                                         :
KELLY MANNO,                             :
                                         :
                                         :   21cv10642 (DLC)
                         Plaintiff,      :
            -v-                          :   OPINION AND ORDER
                                         :
                                         :
MICHAEL CHE CAMPBELL, et al.,            :
                                         :
                                         :
                                         :
                         Defendants.     :
-----------------------------------------X
```

APPEARANCES:

For the plaintiff:
Parness Law Firm, PLLC
Hillel Ira Parness
136 Madison Avenue, 6th Floor
New York, NY 10007

For the defendants:
Davis Wright Tremaine LLP
Nicolas Jampol
Cydney Swofford Freeman
Raphael Holosyzc-Pimentel
865 S Figueroa St Ste 2400
Los Angeles, CA 90017

DENSE COTE, District Judge:

    Comedian Michael Che and others associated with his production of an April 26, 2021 episode of "That Damn Michael Che" (the "Episode") have moved to dismiss the claims of copyright infringement brought by Kelly Manno. The plaintiff alleges that the Episode included material that infringed two short videos she posted on TikTok, each of which is entitled

"Homegirl Hotline" (the "Videos").  For the following reason, the defendants' motion to dismiss is granted.

## BACKGROUND

Unless otherwise noted, the following facts are taken from the First Amended Complaint ("FAC"), the Episode, and the two Videos.  Manno is an Internet content creator.  As of September 12, 2021, Manno has more than 1 million followers on TikTok.

Manno created and owns all rights to the two one-minute-long Videos posted on TikTok, Facebook, and Instagram entitled "HomeGirl Hotline."  The first Video was posted on August 9, 2020, and the second on September 4, 2020.  Both Videos revolve around a fictional service hotline through which callers can order a "homegirl."

In both Videos, a woman calls the HomeGirl Hotline to speak to a dispatcher.  The caller explains the nature of her problem, the dispatcher asks clarifying questions, and the dispatcher sends a Homegirl.  In the first Video, the dispatched HomeGirl throws a cheating husband's belongings out of the house and slashes his car's tires.  In the second Video, the HomeGirl beats the mother of a child bully.  Advertisements for "Homegirl Hoodies" available for purchase at Manno's website are interspersed throughout the Videos.

The defendants are the creators, producers, and broadcasters of a television program airing on HBO Max entitled

2

"That Damn Michael Che."  On April 26, 2021, the defendants released a 23-minute Episode of the program entitled "Only Built 4 Leather Suits."  Four of Episode's ten sketches are built around the use of a fictional mobile app called "homegrrl" to order a homegirl.  The Episode begins with Che entering a confessional in a Catholic Church.  While the Episode cuts to other scenes, the Episode returns to the confessional scene as Che complains that a female bouncer at a nightclub embarrassed him when she denied him entry in front of his friends.  Che explains that he would never hit a woman because he doesn't want to get "cancelled" but asks the priest "do you ever want to sock a lady because she made you feel small in front of your friends?"  The Episode then cuts to a scene in a supermarket, launching the first of the four "homegrrl" segments.

In the first homegrrl segment, a female customer in a supermarket gets into a disagreement with a male checkout clerk.  The customer punches the clerk in the face.  A narrator then asks, "has this ever happened to you?  Crazy lady rocks your sh*t in public, and you can't do anything about it?"  The clerk says to the camera, "there's got to be a better way."  The offscreen narrator returns and says "now there is, with the all new HomeGrrl app.  The HomeGrrl app lets you order a homegirl to fight for you when your hands are tied."  At this point, a homegirl arrives and the clerk gestures to the customer and asks

3

the homegirl to hit her.  The homegirl beats up the customer and the clerk says "thanks, homegirl!"  The homegirl turns to the camera to say "please rate me five stars."

The second homegirl segment begins after a car accident.  A woman gets out of a car and confronts the male driver of the car behind her.  The male driver repeatedly asks the woman to calm down but she yells angrily.  Throughout the argument, the man is seen typing on his phone.  Shortly thereafter, a homegirl arrives and asks "who ordered the HomeGrrl Black?"  The male driver identifies himself and the homegirl offers him some gum or water before the homegirl estimates the time it should take to finish beating the woman driver.  The male driver turns to the camera to say "thank you, Homegrrl."  In an interlude, Che appears on camera and explains that everyone needs a homegirl to call when being bullied by a girl.

In the third homegirl segment, a woman is shown accusing a man's young son of stealing her cellphone.  The man attempts to protest but the woman screams and jumps towards the boy.  A homegirl appears and stops the man from intervening, screaming "no, no, no, no, no! No, no, no, I got this" before beating up the woman.  The man responds "thanks, Homegrrl."

In the fourth and final homegirl segment, three male characters are talking in a nightclub.  One of the male characters recognizes a woman he knows from an earlier sketch.

4

He believes the woman is sharing an embarrassing picture of him with her friends.  Without any dialogue, he takes out his cellphone to order a homegirl through the app and walks away.

On December 13, 2021, Manno initiated the instant action.[1] In her complaint, Manno alleges direct, contributory, and vicarious copyright infringement claims.  On February 11, 2022, the defendants filed a motion to dismiss.  On March 4, the plaintiff filed an Amended Complaint.  On March 25, the defendants renewed their motion to dismiss.  The motion was fully submitted on April 29.

## DISCUSSION

To survive a motion to dismiss for failure to state a claim, the complaint "must plead enough facts to state a claim to relief that is plausible on its face."  Green v. Dep't of Educ. of City of New York, 16 F.4th 1070, 1076-77 (2d Cir. 2021) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Charles v. Orange County, 925 F.3d 73, 81 (2d Cir. 2019) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

---

[1] Manno had dismissed without prejudice an action she filed on September 14, 2021.

5

"In determining if a claim is sufficiently plausible to withstand dismissal," a court "accept[s] all factual allegations as true" and "draw[s] all reasonable inferences in favor of the plaintiffs." Melendez v. City of New York, 16 F.4th 992, 1010 (2d Cir. 2021) (citation omitted). For the purposes of a motion to dismiss, the complaint "includes any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." Coal. for Competitive Elec., Dynergy Inc. v. Zibelman, 906 F.3d 41, 49 (2d Cir. 2018) (citation omitted). This includes the works that are the subject of the copyright claims as "the works themselves supersede and control contrary depictions of them." Peter F. Gaito Architecture, LLC v. Simone Dev. Corp., 602 F.3d 57, 64 (2d Cir. 2010).

The defendants move to dismiss Manno's claim that the Episode infringes her copyright in the Videos. To establish a claim of copyright infringement, "two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Abdin v. CBS Broad. Inc., 971 F.3d 57, 66 (2d Cir. 2020) (quoting Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991)). Registration with the United States Copyright Office is prima facie evidence of ownership of a valid copyright, the

first element of copyright infringement.  Scholz Design, Inc. v. Sard Custom Homes, LLC, 691 F.3d 182, 186 (2d Cir. 2012).

To satisfy the second element of an infringement claim, a plaintiff "must demonstrate that: (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's work." Abdin, 971 F.3d at 66 (citation omitted).  "Actual copying may be established by direct or indirect evidence." Jorgensen v. Epic/Sony Recs., 351 F.3d 46, 51 (2d Cir. 2003) (citation omitted).  As direct proof of copying is often difficult to adduce, actual copying may be established through indirect evidence, including access to the original work. Id.  "Access may be established directly or inferred from the fact that a work was widely disseminated or that a party had a reasonable possibility of viewing the prior work." Boisson v. Banian, Ltd, 273 F.3d 262, 270 (2d Cir. 2001).  "In order to support a claim of access, a plaintiff must offer significant, affirmative and probative evidence." Jorgensen, 351 F.3d at 51 (citation omitted)

To establish wrongful copying, a plaintiff must show a substantial similarity between the defendant's work and protectible elements of her own work. Abdin, 971 F.3d at 66.  A district court may resolve a "substantial similarity" challenge

7

on a Rule 12(b)(6) motion to dismiss.  Peter F. Gaito Architecture, LLC, 602 F.3d at 64.

> [I]t is entirely appropriate for the district court to consider the similarity between those [relevant] works in connection with a motion to dismiss, because the court has before it all that is necessary in order to make such an evaluation.

Id.  "When a court is called upon to consider whether the works are substantially similar, no discovery or fact-finding is typically necessary, because what is required is only a . . . comparison of the works."  Id. (citation omitted).

"[I]deas are not protected by copyright."  Abdin, 971 F.3d at 67.  It is fundamental to copyright law that protection is only afforded to "'original works of authorship,' those aspects of the work that originate with the author himself."  Zalewski v. Cicero Builder Dev., Inc., 754 F.3d 95, 102 (2d Cir. 2014) (citing 17 U.S.C. § 102(a)); see also N.Y. Mercantile Exch., Inc. v. IntercontinentalExch., Inc., 497 F.3d 109, 113 (2d Cir. 2007) ("The sine qua non of copyright is originality." (citation omitted)).

> Everything else in the work, the history it describes, the facts it mentions, and the ideas it embraces, are in the public domain free for others to draw upon.  It is the peculiar expressions of that history, those facts, and those ideas that belong exclusively to their author.

Zalewski, 754 F.3d at 102.

The "scènes-à-faire" doctrine "separate[s] protectable expression from elements of the public domain."  Id.  Under the

8

scènes-à-faire doctrine, "elements of a work that are indispensable, or at least standard, in the treatment of a given topic -- like cowboys, bank robbers, and shootouts in stories of the American West -- get no protection." Id. (citation omitted). "[T]he common use of such stock merely reminds us that in Hollywood, as in the life of men generally, there is only rarely anything new under the sun." Williams v. Crichton, 84 F.3d 581, 588 (2d Cir. 1996) (citation omitted).

"The standard test for substantial similarity between two items is whether an ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard the aesthetic appeal as the same." Abdin, 971 F.3d at 66 (citation omitted). When a work contains both protectible and unprotectible elements, courts "apply a more discerning observer test, which requires substantial similarity between those elements, and only those elements, that provide copyrightability to the allegedly infringed work." Id. (citation omitted). In such cases, a court "must attempt to extract the unprotectible elements from . . . consideration and ask whether the protectible elements, standing alone, are substantially similar." Peter F. Gaito Architecture, LLC, 602 F.3d at 66 (citation omitted). In analyzing the protectible elements, courts "examine the similarities in such aspects as the total concept and feel, theme, characters, plot, sequence, pace, and

9

setting" of the works.  Abdin, 971 F.3d at 66.  "[G]eneric and generalized character traits such as race, gender, and hair color are not protectible.  Id. at 67.  A plaintiff fails to establish copyright infringement "[w]hen the similarities between the protected elements of [the] plaintiff's work and the allegedly infringing work are of small import quantitatively or qualitatively."  Boisson, 273 F.3d at 275.

   A. Access

Manno has plausibly pled that the defendants had a reasonable possibility of viewing the Videos based on their wide dissemination on multiple streaming platforms.  The defendants argue that Manno has failed to allege access because she has not described the number of Internet views of her Videos before the publication of the Episode in April 2021.  Manno has alleged the number of her followers and the dissemination of her Videos on streaming platforms.  That is sufficient to plead access.

   B. Substantial Similarity

Manno's claim of copyright infringement must be dismissed for its failure to plead infringement of any protectible element of either Video.  Even the underlying premise regarding the need for a homegirl is different.  In the Videos a woman calls for a homegirl; in the Episode, a man calls a homegirl to fight his battles since he cannot be seen striking a woman.  To the extent

that any similarities exist between the Episode and the Videos, these elements are not protectible.

The idea of hiring a homegirl to fight battles, as Manno herself admits, is not protectible. Similarly, depicting a concept in an order-and-arrival structure is not protectible. In fact, this order-and-arrival structure flows naturally from the general premise of hiring a service to address a problem. The service a customer orders necessarily arrives <u>after</u> one requests it. Any similarity in the structure of the sketches in the Episode and the Videos is simply traced to a reliance on a <u>scene a faire</u>.

> Manno argues that the protectible element in her Videos is
> 
> the unique creative comedic depiction of a service through which a customer in need specifically summons a home girl to fight one's battles, and the videos structure that expression around a depiction of the act of calling for the homegirl, and the homegirl arriving and proceeding to inflict violence or damage as a surrogate upon the target.

Manno also alleges that the works are similar because they depict variations on the same theme of violence and vengeance. These are general unprotectable ideas and "ideas are not protected by copyright." <u>Abdin</u>, 971 F.3d at 67.

Manno next argues that there are similarities between the homegirl characters in the Episode and the Videos. Manno does not explain how their characters are similar and simply includes a side-by-side picture of one of the characters in her Videos

11

and one of the several homegirl characters in the Episode. It is hard to observe any similarity here. The two characters are dressed differently; the only apparent similarity is that the characters are both women and both wear sneakers. Such generic and common characteristics cannot serve as the basis for an infringement claim. Further, in the Episode, several different homegirl characters are shown and each is played by a different actor. This only serves to underscore the lack of similarity between the characters in the Episode and the Videos.

Finally, Manno requests that the Court bypass the question of substantial similarity until the parties have engaged in discovery or obtained expert testimony. It is entirely appropriate to address the substantial similarity issue now. The Videos and Episode were submitted to the Court by the defendants in support of their motion. The relevant inquiry for a copyright infringement claim is an ordinary observer's comparison of the works. Manno does not explain why an expert witness or any discovery is necessary to evaluate the similarities between the works.

Plaintiff does not dispute that her contributory and vicarious copyright infringement claims must fail if she cannot establish a claim for direct copyright infringement. The defendants' motion to dismiss is therefore granted.

**CONCLUSION**

The defendants' March 25, 2022 motion to dismiss is granted. The Clerk of Court shall enter judgment for the defendants and close the case.

Dated:   New York, New York
         June 22, 2022

```
                                   _____
                                           DENISE COTE
                                   United States District Judge
```